## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JUAN MARES,

                       Plaintiff,

     v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                     Defendant.

_____

Civil Action No. 14-7507 (FLW)

**OPINION**

**WOLFSON, United States District Judge**:

       Juan Mares ("Mares" or "Plaintiff"), appeals from the final decision of the Acting Commissioner of Social Security, Carolyn W. Covlin ("Defendant") denying Plaintiff disability benefits under Title II of the Social Security Act (the "Act") for the time period from November 10, 2010 to June 24, 2012.  After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") opinion was based on substantial evidence and, accordingly, affirms the decision.

## I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY

       Plaintiff was born on June 24, 1962, and he was 48 years old on the alleged disability onset date of November 10, 2010.  Administrative Record 18, 79, 186-87, 204 (hereinafter "A.R.").  Plaintiff is a high school graduate and has completed some college work.  A.R. 44.  He is engaged and lives with his fiancé and his stepdaughter, who was aged 18 at the time of the administrative law hearing.  A.R. 42-43.  Plaintiff has two adult children who do not reside with him.  A.R. 42.

       Prior to his alleged disability, Plaintiff worked as a warehouse worker, a mover for three different companies, a machine operator, a food service worker, and most recently, as a delivery

driver for a pizza restaurant.  A.R. 215.  According to Plaintiff, he stopped working as a pizza delivery driver on January 12, 2008, due to pain in his lower back, left wrist, and right knee.  A.R. 208-09.

On February 15, 2011, Plaintiff applied for social security disability insurance benefits and supplemental security income, alleging disability beginning on November 10, 2010.  A.R. 79-110. Plaintiff's claim was denied on July 9, 2011, A.R. 79-110; 126-31, and again upon reconsideration on December 2, 2011.  A.R. 111-22; 133-38.  On December 14, 2011, Plaintiff requested a hearing, A.R. 139, which was held on November 5, 2012, before an ALJ. A.R. 37-78.  Plaintiff, who was represented by Robert Ryan, Esq. at the hearing, appeared and testified, A.R. 42-70, 75-77, and testimony was taken from Rocco J. Meola, a vocational expert, A.R. 71-74.  On March 13, 2013, the ALJ issued a decision denying disability prior to June 24, 2012, and finding disability after that date due to a change in Plaintiff's age category.  A.R. 18-36.  Plaintiff requested review by the Appeals Council, which was denied on October 3, 2014.  A.R. 1-6. On December 3, 2014, Plaintiff filed the present appeal against Defendant.

### A.    Review of the Medical Evidence

Plaintiff's health records begin in January of 2008.  On January 13, 2008, Plaintiff suffered an oblique fracture of his right ankle (distal fibula) during an altercation at work.  A.R. 283-89. Plaintiff's right knee was also examined and found to have no evidence of fracture or dislocation. A.R. 291.  Plaintiff's right ankle was stabilized with an air split and he was given crutches.  A.R. 284.  Plaintiff had follow-up examinations on January 24, 2008, A.R. 282, February 7, 2008, A.R. 280, and February 28, 2008, A.R. 278, and March 13, 2008, A.R. 276.

From December 21, 2010 to February 10, 2011, Plaintiff attended sixteen sessions of outpatient physical therapy at St. Peter's University Hospital Physical Medicine and Rehabilitation

Department.  A.R. 293.  The basis for Plaintiff's referral was his right ankle fracture.  A.R. 293.

On February 10, 2011, Plaintiff was discharged from physical therapy due to "a plateau in pain

control and functional mobility gains."  A.R. 293.  At his final session, Plaintiff reported his pain

as "3/10" for his right foot/ankle and that his functional status included the ability to "run & jump"

and the "ability to shovel snow [for] 50 minutes."  A.R. 294.

On January 24, 2011, an MRI was performed on Plaintiff's lumbar spine, which revealed

the following conditions:

- a transitional vertebrae with partial sacralization of the L5 vertebral body with a relatively well-formed disc at the L5-S1 level;

- disc desiccation at the L4-L5 disc space;

- a disc bulge at the L3-L4 level causing mild central stenosis without significant neural forminal stenosis;

- a disc bulge at the L4-L-5 level with a right disc protusion causing mild central canal stenosis as well as moderate right lateral recess stenosis, and mild to moderate bilateral neural forminal stenosis;

- rudimentary disc space without central canal or neural forminal stenosis at L5-S1; and

- a cystic lesion within the left kidney.

A.R. 295.  On February 4, 2011, Plaintiff had a follow-up examination on the cystic lesion on his

left kidney, in which the cyst was described as "small," measuring 7mm in diameter, and Plaintiff's

renal sonogram was found to be  "otherwise normal."  A.R. 298.

On February 23, 2011, Plaintiff was examined by Dr. Carmen Tadros for a review his MRI

results.  A.R. 309.  Plaintiff reported that his back pain was a 2 and that his joint pain was a 1.[1]

A.R. 309.  Dr. Tadros observed that Plaintiff's back exam was "with in normal limits with normal

---

[1] On that same day, Plaintiff reported to Dr. Diana Lopez that his back pain was a 3 and his joint pain was a 2.  A.R. 311.

[range of motion].  Motor strength and sensation intact bi upper and lower extremities."  A.R. 310. Dr. Tadros's plan noted that Plaintiff's MRI showed mild central canal stenosis and mild to moderate BI neural forminal stenosis.  A.R. 310.  Dr. Tadros found Plaintiff's multiple joint pains "stable due to trauma and joint repairs in the past."  A.R. 310.

On May 26, 2011, a second MRI was performed on Plaintiff's lumbosacral spine, which showed minimal disc space narrowing at L5-S1 with S1 transitional, but was "otherwise negative." A.R. 338.  Posterior elements were observed to be unremarkable without evidence of hypertrophic change, spondylosis, or spondylolisthesis.  A.R.338.

On June 10, 2011, Plaintiff was examined by Ronald Bagner, M.D., of Central Jersey Medical Evaluation, at the state disability agency's request.  A.R. 326-27.   Plaintiff recounted his medical history as follows:  an injury to his right wrist in 1991; a back injury from a motor vehicle accident, which occurred on September 24, 2002; injury to his left wrist in 2004; a sprain to his right knee in 2005; and his fractured right ankle from January 2008.  A.R. 326.  Plaintiff complained of pain radiating from his lower back up to the cervical area of his left shoulder, pain radiating to both his buttocks, and pain radiating down his right leg. A.R. 326.  Dr. Bagner observed that Plaintiff ambulated with a right limp at a reasonable pace, could get on and off the examining table without difficulty, was not uncomfortable in the seated position during his interview, did not use a cane or crutches, and could heel and toe walk .  A.R. 326-27.   Dr. Bagner noted that Plaintiff had pain when he moved his lower back and right knee, but that the range of movement for both was normal.  Id.  Dr. Bagner also noted a normal range of motion for Plaintiff's wrists.  Id.

From July 12, 2011 to August 1, 2011, Plaintiff attended an additional six sessions of outpatient physical therapy at St. Peter's University Hospital Physical Medicine and Rehabilitation

Department; the basis for Plaintiff's referral was lower back pain.  A.R. 341.  On August 1, 2011, Plaintiff was discharged from physical therapy "due to lack of functional progress" and Plaintiff's physical therapist, Morad R. Fairoz, PT, DPT, specifically noted that "Plaintiff's subjective complaints do not match with objective findings."  A.R. 341.

On July 21, 2011, Plaintiff underwent a renal ultrasound which determined that the cyst on his left kidney remained the same size as in February 2011, and that the presence of internal echoes suggested it was a complex cystic lesion.  A.R. 340.

After the administrative hearing, but before the ALJ issued her decision, the ALJ was also provided with the following additional medical records.  On November 27, 2012, Plaintiff went to the New Jersey Pain Institute, complaining of chronic lower back pain, which he described as intermittent, throbbing, shooting, and stabbing, and also complained of intermittent right foot numbness.  A.R. 361.  Plaintiff was examined by William R. Grubb, DDS, MD, who observed that Plaintiff walked with an antalgic gait and showed right-sided lower back tenderness.  A.R. 364-65.  Plaintiff's motor exam showed full 5/5 strength throughout his upper and lower extremities.  A.R. 363-64.  Plaintiff was scheduled for an epidural injection on December 17, 2012, A.R. 360, and again on February 25, 2013, A.R. 367.

### B.    Review of Disability Determinations

On March 8, 2011, Plaintiff applied for social security benefits and supplemental security income. A.R. 186-203.  On July 6, 2011, a state agency medical consultant, Dr. Arthur Pirone, conducted a residual functional capacity ("RFC") assessment based on Plaintiff's medical records. A.R. 79-88, 88-98.  Dr. Pirone concluded that Plaintiff could occasionally lift/carry twenty pounds and frequently lift/carry ten pounds; could stand/walk for about six hours and sit for about six

hours during an eight-hour workday; and that Plaintiff's records did not show any pushing/pulling, postural, or manipulative limitations. A.R. 84, 94-95.

On July 9, 2011, the Social Security Administration denied Plaintiff's claims, finding that Plaintiff was not disabled and that his condition(s) should not keep him from working. A.R. 126. The Administration based its determination on a review of medical reports from Robert Wood Johnson Hospital, St. Peter's Management Corp, and the Central Jersey Medical Evaluation Orthopedics Consultative exam on June 7, 2011. A.R. 126. Based on those reports, the Administration determined that although Plaintiff claimed disability based on his cystic lesion on his left kidney, low back pain, wrist pain, and right knee pain, he was not disabled, finding:

- Despite some continuing pain following your surgeries, you should be able to stand, sit and move about well enough to work.

- You have a renal cyst. However, lab tests show that your condition does not prevent you from working.

- The evidence shows no other condition which significantly limits your ability to work.

- We realize your condition prevents you from doing your usual work; however, it does not prevent you from doing other types of work requiring less physical effort.

A.R. 126.

On July 20, 2011, Plaintiff requested the Administration to reconsider its disability determination. A.R. 132. Upon receipt of Plaintiff's request for reconsideration, the Administration had Plaintiff's claim independently reviewed by a physician and disability examiner, Dr. Deogracias Bustos, who reached the same conclusions as Dr. Pirone. A.R. 133, 101-10, 111-20. On December 2, 2011, the Administration again determined that Plaintiff was not disabled, finding:

- While you still experience some pain in your knee and lower back, there is no severe muscle weakness or loss of feeling in your limbs.

- You do have pain in your wrist.  However, it does not limit your ability to move about and use your limbs.

- You suffer from a kidney problem.  However, lab tests show that your condition does not prevent you from working.

- The evidence shows no other condition which significantly limits your ability to work.

- Although you are not able to do any of the work you have done during the past 15 years, there are other kinds of work you should be able to do.

A.R. 133-34.

## C.     Review of Testimonial Record

### 1.     Plaintiff's Testimony

A hearing was held on November 5, 2012, before the ALJ.  A.R. 37-78.  At the hearing, Plaintiff testified that he was 50 years old (as of the date of the hearing), and he estimated his weight as 175 pounds on the day of the hearing; Plaintiff also expressed that he was shrinking in height due to his injuries.  A.R. 67.

Plaintiff stated that he was born in Puerto Rico and came to the United States when he was two years old.  A.R. 45.  Plaintiff testified that he used to be a boxer, and had competed in the Olympics, A.R. 67-68, until he was stabbed in 1993, A.R. 44, which resulted in an injury that was the subject of a previous social security claim, A.R. 44-45.

Plaintiff testified to his job history, stating that in 2000, he worked as a "Q-top" for McDonald's, A.R. 46; in 2001, he worked for Laggard and Platt as a machine operator, A.R. 46, 47; and in 2002, he worked for Mattress cowboy as a truck driver, A.R. 46, 47.  Plaintiff also testified that in 2003, he worked for Apollo Moving and Storage, which he described as a "heavy job" that "broke [him.]" A.R. 47-48.  Plaintiff testified that the last position he held was in 2008 as a delivery driver for a Papa John's pizzeria.  A.R. 48.

Plaintiff testified that he can no longer work because of a surgery performed to his left hand in 2004, which was injured when he fell working for Apollo Moving and Storage. A.R. 49, 52. Plaintiff stated that although he is right-handed, he also had a previous fracture to his right hand. A.R. 50-51. In addition, Plaintiff also described the surgery he received to repair his right knee in 2005, which he stated was also injured while he worked for Apollo Moving and Storage. A.R. 51-52. Plaintiff further testified that his tibia and fibula were broken, and that his cast for that injury aggravated his knee injury because the cast was placed "all the way up to [his] hip instead of [being put] under [his] knee." A.R. 54.

Plaintiff testified that he used to take the medications advair and albuterol. A.R. 52. At the time of the administrative hearing, Plaintiff testified that he was taking flexeril, and that he had previously been prescribed percocet and tramadol. A.R. 52-53, 63-64. Plaintiff explained that he had physical therapy "for everything" and that he renewed that physical therapy in 2011, A.R. 53, and stated that he recently received a shot in his back, A.R. 53-54. Plaintiff stated that he never had surgery on his back. A.R. 54. Plaintiff testified that although he carries a cane, it was not prescribed to him. A.R. 55-56.

Plaintiff testified that he has a driver's license and is able to drive, and that he had driven himself to the hearing. A.R. 43. Plaintiff stated that he can walk for 10-15 minutes before having pain in his right ankle, A.R. 56, and that he can stand for a half an hour with pain, A.R. 57. Plaintiff provided the example that when he cooks for a half an hour, his body hurts. A.R. 57. Plaintiff opined that he did not believe he could walk for six hours a day. A.R. 75. Plaintiff stated that when he sits, he gets radiation under his left shoulder blade, and that he could sit for an hour to watch TV, but to avoid getting a stiff neck, he would have to move from side to side and could not sit straight. A.R. 57-58, 59.

8

Plaintiff testified that he could lift a gallon of milk, A.R. 59, and also could lift ten pounds of rice or potatoes. A.R. 59. Plaintiff agreed he could lift 20 pounds, but that he does not lift that amount of weight anymore. A.R. 59. Plaintiff also described getting a "Charley horse, like a knot" from lifting a pot when cooking. A.R. 58. Plaintiff stated that when he showers, he has to lean against the wall on his left side to avoid twisting his knee. A.R. 59-60.

Plaintiff testified that during the day, he walks, sits, does the dishes, sleeps, and cooks. A.R. 61-62. Plaintiff state that he does not do the laundry. A.R. 61-62. Plaintiff described having to lean on his grocery cart when shopping and that when he carried groceries his left hand will open slowly and he will feel pain. A.R. 51, 62.

Plaintiff testified that he naps every day for an hour or two because he does not have many chores. A.R. 64-65. Plaintiff stated that he cannot sleep for more than 4 hours because his stomach hurts "like a volcano inside," which he described as a "stabbing sensation or that it travels, radiation" A.R. 65. Plaintiff believes that his stomach issue was caused by his medication. A.R. 65. Plaintiff also testified that he "fight[s] with [his] sleep" and "toss[es] and turn[s] constantly" when sleeping and that he needs to take medication to sleep. A.R. 60.

### 2.    Testimony of the Vocational Expert.

Mr. Rocco J. Meola, an impartial vocational expert, also testified at the hearing. Meola testified that Plaintiff held a variety of jobs over the past 15 years, which Meola characterized as medium to heavy and semi-skilled. A.R. 71.

Next the ALJ outlined the following residual functional capacity for "light" work for Mr. Meola:

> Let's assume someone of the claimant's age, educational background and work history. And assume the person could perform – the Agency suggests light work. So that would be 20 pounds occasionally, 10 pounds frequently; stand or walk six hours in an eight-hour workday; sit for six hours in an eight-hour workday;

unlimited pushing and pulling within the weight restriction that I have given you, but no operation of foot controls with the left lower extremity.

And if seated during the workday, must be given the opportunity, at the 45 to 1-hour mark, to stand and stretch for 3 to 5 minutes.  The person could not use ladders, ropes or scaffolds; could occasionally use ramps or stairs; could occasionally balance, stoop, kneel, crouch and crawl; no exposure to unprotected heights, hazards or dangerous machinery and that would be it.

A.R. 72.  The ALJ asked Mr. Meola if this person could perform any of the work that Plaintiff had previously performed. A.R. 72.  Mr. Meola responded negatively, based on the skill level of the previous jobs.  *Id.*  However, Mr. Meola testified that there were jobs that this individual could perform, such as a ticketer, weigher, or decal applier, and further testified that these jobs existed in numbers of approximately 2,000 in Northern New Jersey/Metro New York region and in excess of 50,000 nationwide. A.R. 72-73.  Next, the ALJ outlined a RFC for "sedentary work for Mr. Meola:

Let's assume the best the person could perform would be the demands of sedentary work.  That would be ten pounds occasionally; standing or walking for 2 hours; sitting for 6 hours if given the opportunity at the 45 to 1-hour mark to stand and stretch for 3-5 minutes; no operation of foot controls with the left – no, it's the right lower extremity. . . .

. . . And then the other postural limitations, no use of ladders, ropes or scaffolds; only occasional use of ramps or stairs; occasional balancing, stooping, kneeling, crouching and crawling; no use – no exposure to unprotected heights, hazards or dangerous machinery.

A.R. 73.  Mr. Meola testified that sedentary jobs at this level existed, and gave the examples of scale operator, carding machine operator, and assembler, and further testified that these jobs existed in numbers of approximately 1,200 in Northern New Jersey/Metro New York region and in excess of 3,000 nationwide. A.R. 73-74.

Finally, the ALJ asked Mr. Meola whether a person could maintain employment in the unskilled labor market if "the person has difficulty with pain and discomfort during the workday

10

and also needs to take naps and, as a result, could not concentrate and focus for more than six of the eight hours in a workday" or if that person "needed to be absent from work roughly twice a month because of days when they would have more pain and couldn't make it to work." A.R. 74. Mr. Meola answered both questions in the negative. A.R. 74.

### D.    ALJ's Findings

The ALJ issued a written decision on March 13, 2013. A.R. 23-32. The ALJ began by finding that Plaintiff met the insured status requirement of the Social Security Act to remain insured through September 30, 2012. A.R. 23, 25. Next, the ALJ applied the standard five-step process to determine if Plaintiff had satisfied his burden of establishing disability. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 10, 2010, the alleged onset date. A.R. 25. Second, the ALJ found that Plaintiff had the following severe impairments: "a disorder of the back, a disorder of the right lower extremity, a disorder of the left wrist, a disorder of the right knee, and hypertension." A.R. 25-26.

Third, the ALJ found that Plaintiff does not have an impairment, or a combination of impairments, that meets or medically equals the severity of one of the listed impairments under the Act that would qualify for disability benefits. A.R. 26. In this step, the ALJ paid "particular attention" to the dysfunction of Plaintiff's joints. A.R. 26. However, the ALJ determined that Plaintiff did not have the necessary degree of difficulty in performing fine and gross movements, or the degree of difficulty in ambulating that is required. A.R. 26. The ALJ also found that the medical evidence did not establish any of the requirements for a listed impairment for spinal disorders. A.R. 26-27.

Fourth, the ALJ found that Plaintiff had the residual functional capacity to perform the exertional demands of sedentary work as defined in 20 C.F.R. § 404.1567(a). A.R. 27. Specifically the ALJ concluded that, as to exertional demands, Plaintiff can:

> lift/carry 10 pounds occasionally; stand/walk [for] 6 hours in an eight-hour work day; sit for 6 hours in an eight-hour work day (if given the opportunity at the 45 minute – 1 hour mark to stand and stretch for 3-5 minutes); perform no operation of foot controls with his right lower extremity; and perform unlimited pushing and pulling with the weight restriction given.

A.R. 27.

The ALJ also found that, as to postural and environmental demands, Plaintiff can only perform jobs that do not require use of ladders, ropes, or scaffolds; that Plaintiff may perform jobs that only occasionally require the use of ramps or stairs; and that Plaintiff may perform jobs that require occasional balancing, stooping, kneeling, crouching and/or crawling, and that require no exposure to unprotected heights, hazards, or dangerous machinery.  A.R .27.  As to his mental capabilities, the ALJ determined that Plaintiff can only preform jobs that are unskilled and repetitive. *A.R. 27.*

In reaching these determinations, the ALJ reiterated some of Plaintiff's testimony, A.R. 27-28, and the medical evidence presented, A.R. 28-29. The ALJ then concluded that "the evidence fails to support the claimant's assertions of total disability."  A.R. 29.  The ALJ concluded that Plaintiff's RFC was supported by objective medical evidence and the statements of the Plaintiff and that "[w]hile it is reasonable to find that the claimant's alleged impairments would preclude more than the full range of work, the objective evidence does not establish that the claimant would be precluded from all work activity."  A.R. 30.

Fifth, the ALJ found that, based on Meola's testimony, Plaintiff was unable to perform any past relevant work. A.R. 30.  The ALJ then examined whether Plaintiff could make a successful

adjustment to other work, which required a two-part analysis based on Plaintiff's age.  A.R. 30-31.  The ALJ determined that for the time period from the established disability onset date of November 10, 2010, to June 24, 2012, (Plaintiff's 50th birthday), the transferability of job skills was not a material consideration because the Medical-Vocational Rules framework supported a finding that Plaintiff, as a "younger individual," was "not disabled" regardless of presence of transferable job skills.  A.R. 30.  The ALJ determined that prior to June 24, 2012, given Plaintiff's "age, educational, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed."  A.R. 30.

However, on June 24, 2012, Plaintiff's age category changed from a "younger individual" (within the 45-49 age range) to an "individual closely approaching advanced age."  A.R. 30-31.  The ALJ determined that, after June 24, 2012, considering Plaintiff's "[a]ge, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform."  A.R. 31.

Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Act, prior to June 24, 2012, but that he had become disabled on June 24, 2012 and continued to be disabled as of the date of the ALJ's decision. A.R. 32.

## II.   STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record."  42

U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential.  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993).  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements.  *See* 42 U.S.C. § 423(c).  Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

14

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination

15

of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. Id.

## III.  PLAINTIFF'S CLAIMS ON APPEAL

Plaintiff makes two arguments on appeal as to why the ALJ's disability determinations were unsupported by substantial credible evidence. First, Plaintiff argues that the ALJ failed to combine the severe disabilities she found Plaintiff suffered from in Step 2 for a discussion of medical equivalence to a listed impairment at Step 3 of the disability evaluation. Next, Plaintiff argues that the disabilities the ALJ identified at Step 2 played "little if any role" in the articulation of Plaintiff's RFC at Step 4, which Plaintiff describes as "confused, vague and unsupported by substantial evidence." The Court shall address each argument in turn.

16

### A.  The ALJ Considered Plaintiff's Severe Disabilities in Combination.

Plaintiff first argues that the ALJ's determinations that Plaintiff's ankle, leg, and back impairments did not meet or equal the listings in Section 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine) are unsupported by substantial credible evidence.  At Step Three, an ALJ must consider each of the claimant's individual conditions and determine whether they meet or equal any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, that would give rise to a presumption of disability.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  Additionally, the regulations state that if the claimant has "a combination of impairments, no one of which meets a listing . . . [the ALJ] will compare [the claimant's] findings with those for closely analogous listed impairments."  20 C.F.R. § 404.1526(b)(3).  In order to find that a combination of impairments is medically equivalent to one in the listing, it must be "at least of equal medical significance."  *Id.* The ALJ should thus review the record and determine whether the ailments in combination were equal to any of the enumerated impairments.  *See* 20 C.F.R. § 404.1523 ("In determining whether [a claimant's] physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law," an ALJ must "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

An ALJ's conclusion that a claimant's impairments do not meet or equal any Listed Impairment without "identifying the relevant listed impairments, discussing the evidence, or explaining [the] reasoning" constitutes error requiring remand.  *See Burnett v. Comm'r of Social Security*, 220 F.3d 112, 119 (3d Cir. 2000).  For example, in *Burnett*, the Third Circuit found an ALJ's conclusory statement that the claimant failed to meet any listing "hopelessly inadequate" and remanded the case for a full discussion of the evidence and explanation of the ALJ's reasoning.

220 F.3d at 119-120.  In *Jones v. Barnhart*, 364 F.3d 501 (3d Cir. 2004), the Third Circuit further clarified that the purpose of *Burnett* was to guarantee "sufficient development of the record and explanations of findings to permit meaningful review of step-three determinations."  364 F.3d at 505.  However, the Third Circuit noted that an ALJ is not required to "use particular language or adhere to a particular format in conducting [her] analysis," but that the decision "read as a whole" must be capable of providing meaningful judicial review.  *Id.*

Here, with respect to the listing for a major dysfunction of a joint, the ALJ stated that "the evidence does not demonstrate that the claimant has the degree of difficulty in performing fine and gross movements . . . or the degree of difficulty in ambulating" as required in listing 1.02.  A.R. 26.  On that same page, the ALJ noted in her Step 2 analysis that Plaintiff's treatment notes from November 2012 indicated that his "motor examination was noted to be within normal limits, showing a 5+/5 strength in the upper and lower extremities."  A.R. 26, *see also* A.R. 28-29.

With respect to the listing for a disorder of the spine, the ALJ stated that the evidence did not show nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, *see* 20 CFR Part 404 Appx. 1.04, and that "the evidence does not demonstrate that the claimant has a degree of difficulty in ambulating," as required in listing 1.04C.  A.R. 26-27.  Indeed, an "[i]nability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  20 C.F.R. Part 404 Appx. 1.00B2b.  In her Step 2 analysis, the ALJ recounted the medical evidence of Plaintiff's history of back pain and stated that Plaintiff's treatment notes from November 2012 indicated he did not have an "extreme

limitation of the ability to walk" but rather that he "had an antalgic gait and right sided-tenderness of the right lower back.  He had no spinal tenderness and no sciatic notch tenderness.  He exhibited a range of motion that was limited in hyperflexion; he also had abnormal toe and heel walking."  A.R. 26; *see also* A.R. 28-29.  Accordingly, the ALJ found that Plaintiff's impairments did not meet any of the listings for a disorder of the spine.

Essentially, Plaintiff argues that the ALJ's Step 3 analysis was not supported by substantial, credible evidence because the ALJ did not recount the medical evidence on which she relied to support her Step 3 analysis in that specific section of the opinion.  In other words, that the ALJ did not repeat her description of the medical evidence she previously outlined elsewhere in her decision.  A.R. 26.  However, when the ALJ's decision is "read as a whole," *Jones*, 364 F.3d at 505, it is clear the ALJ's determination was supported by substantial evidence.[2]

Second, Plaintiff asserts that the ALJ failed to consider his disabilities in combination.  However, "where the ALJ has indicated that the impairments have been considered in combination, there is 'no reason not to believe' that the ALJ did so."  *Gainey v. Astrue*, No. 10-1912, 2011 U.S. Dist. LEXIS 44369, at *34 (D.N.J. Apr. 25, 2011) (quoting *Morrison v. Comm'r of Soc. Sec.*, 268 F. Appx. 186, 189 (3rd Cir. 2008)).  Although the ALJ did not specifically list out each disorder she was considering in combination, it is clear from her analysis she was

---

[2] The Court does, however, agree with Plaintiff that the ALJ's finding of hypertension is unsupported by the record.  Plaintiff did not complain of hypertension in his disability report, A.R. 208, and neither Dr. Pirone nor Dr. Bustos observed that Plaintiff had hypertension, although both observed that Plaintiff had "non-severe" hyperlipidemia (high blood cholesterol).  A.R. 83, 93, 105, 115.  Plaintiff's medical records make reference to a *family* history of hypertension, A.R. 305, but the only evidence of hypertension in Plaintiff discernable in the record is a reference that Plaintiff's past medical history including high blood pressure, A.R. 361, and Plaintiff's statement in his disability report that he takes hyrdrochlorol for high blood pressure, A.R. 254.  However, Plaintiff makes no argument that the ALJ's finding that he had hypertension negatively impacted the ALJ's analysis.

comparing all of Plaintiff's disorders to the Impairment List.  *See id.* ("[T]here is no requirement that the ALJ should explicitly state that he considered Plaintiff's impairments both individually and in combination.") (citing *McQueen v. Comm'r of Soc. Sec.*, 322 Fed. Appx. 240, 242-43 (3d Cir. 2009)).  Moreover, Plaintiff has failed to identify which impairment listing the ALJ should have determined that his impairments, when considered in combination, met or equaled.  *See id.* at *35-36 (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).  Accordingly, the record shows that the ALJ's finding at Step Three that Plaintiff's impairments did not, in combination, match listing 1.02 (major joint dysfunction) or listing 1.04 (disorders of the spine) is supported by substantial evidence.  A.R. 26-27.

### B. The ALJ's Residual Functional Capacity Determination is Support by Substantial Credible Evidence.

Plaintiff attacks the ALJ's RFC determinations as "confused and vague" because the ALJ found that Plaintiff can:  (1) stand or walk for both two hours (as required for "sedentary work" as defined by 20 C.F.R. § 404.1567(a)) and for six hours; (2) climb stairs and ramps 2 hours and 40 minutes per day while also kneeling, crouching, and crawling on his right leg, despite also finding that Plaintiff suffers disorders of the ankle and leg which prevent him from operating right foot controls; and (3) lift, handle, finger, push, pull or perform fine and gross manipulation despite finding a severe impairment of his left wrist.  Plaintiff also challenges the RFC as unsupported because the ALJ did not articulate the medical evidence she relied on to determine (1) Plaintiff's (conflicting) abilities to stand and walk; and (2) that Plaintiff can sit for an entire day if he is allowed to stretch for 3-5 minutes every 45-60 minutes.

"'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  *Burnett*, 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see* 20 C.F.R. § 404.1545(a).

> In making a residual functional capacity determination, the ALJ must consider all evidence before him.  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.  In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.

*Burnett*, 220 F.3d at 121 (internal quotation marks and citations omitted).

First, as to Plaintiff's challenge that the ALJ's RFC determinations contain conflicting abilities to perform "sedentary work," as defined in 20 C.F.R. § 404.1567(a) ("Jobs are sedentary if walking and standing are required occasionally"), and the ALJ's statement that Plaintiff can "stand/walk [for] 6 hours in an eight-hour work day," A.R. 27, the record reflects that this statement was merely a scrivener's error.  Indeed, the ALJ specifically rejected the state agency's previous determination that Plaintiff could engage in "light" work, *see* 20 C.F.R. § 404.1567(b), A.R. 29, and the ALJ's apparent misstatement appears only in the determination's *point heading*.  Rather, in the ALJ's *analysis* of Step 4, she concludes that Plaintiff can perform sedentary work, including "standing and/or walking up to two hours in an eight-hour workday[.]"  A.R. 29.  Plaintiff is incorrect that this finding is unsupported because the ALJ recounted the medical evidence that supported her conclusion:  (1) Dr. Bagner's examination that Plaintiff could "walk at a reasonable pace; walk on his heels and toes; and walk without any assistive device," A.R. 28; and (2) Plaintiff's functional report, in which he stated that he "can walk half a mile to a mile, then needs to rest for 5-10 minutes."  A.R. 29.

Second, the Court also rejects Plaintiff's claim that the RFC determinations are "confused" because, as Plaintiff argues, the ALJ found that Plaintiff can occasionally climb stairs and ramps, and occasionally crawl and kneel, while also finding Plaintiff unable to operate right foot controls.  The ALJ recounted that Dr. Bagner's evaluation showed that Plaintiff had no difficulty in getting on and off the examination table, he had 2+ flexes in his knees and ankles, and that both of his

21

knees and ankles were "stable and showed a normal range of movement." A.R. 28-29. Moreover, Plaintiff fails to point to any contradictory medical evidence stating that Plaintiff could not kneel, stoop, or crawl that the ALJ failed to address. Further, the definition of sedentary work is silent as to the ability to crawl or kneel. 20 C.F.R. § 404.1567(a). Accordingly, even if this Court were to accept Plaintiff's argument that he cannot crawl or kneel, he would still not qualify as disabled (prior to his 50th birthday).

Third, the Court disagrees with Plaintiff's argument that the RFC did not account for Plaintiff's left wrist impairment. Although Plaintiff's left wrist was not singled out in the RFC, the ALJ did find that Plaintiff was limited to carrying or lifting only ten pounds occasionally, and could perform unlimited pushing and pulling within that weight restriction. A.R. 27. The ALJ also specifically recounted Dr. Bagner's evaluation of Plaintiff which found a normal range of motion in both of his wrists, that he was able to form a fist and oppose his thumbs, and that he had 5/5 grip strength. A.R. 28.

Fourth, the Court also disagrees with Plaintiff's argument that the ALJ's finding that Plaintiff can sit for an entire day if he is allowed to stretch for 3-5 minutes every 45-60 minutes is not supported by the record. Although the ALJ did not specifically recount Plaintiff's testimony in this part of her decision, Plaintiff stated at the hearing that he could sit for an hour, but to avoid getting a stiff neck, he would have to move from side to side and could not sit straight. A.R. 57-58, 59. In other words, the ALJ did not "reject" any evidence medical evidence, but relied on the record as a whole to reach her conclusion. *See Burnett*, 220 F.3d at 121.

In sum, the only "error" that Plaintiff has identified in the RFC step is the ALJ's apparent scrivener error stating that Plaintiff is capable of sitting and walking 6 hours out of 8 hours in the workday, rather than only 2 hours. However, this does not change the ALJ's ultimate conclusion

that Plaintiff was not disabled for the time period from November 10, 2010 to June 24, 2012, nor does it alter that that determination was supported by substantial credible evidence.

## IV.    CONCLUSION

For the reasons set forth above, I find that the ALJ's decision was supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed. An appropriate Order shall follow.


Dated: November 9, 2015

/s/ The Honorable Freda L. Wolfson

United States District Judge